IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

| | | |
|---|---|---|
| **MARTHA WEATHERLY** | ) | |
| | ) | **Case No. 3:24-cv-00805** |
| **v.** | ) | |
| | ) | |
| **COMMISSIONER OF SOCIAL SECURITY** | ) | |

<u>**MEMORANDUM OPINION**</u>

Plaintiff Martha Weatherly filed this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of the final decision of the Social Security Administration ("SSA") denying her disability insurance benefits ("DIB") under Title II of the Social Security Act (the "Act"). The case is currently pending on Plaintiff's motion for judgment on the administrative record (Docket No. 12) and supporting memorandum (Docket No. 13), to which Defendant SSA has responded (Docket No. 15) and Plaintiff has replied (Docket No. 16). This action is before the undersigned for all further proceedings pursuant to the consent of the parties in accordance with 28 U.S.C. § 636(c). (Docket No. 5.)

Upon review of the administrative record as a whole and consideration of the parties' filings, Plaintiff's motion (Docket No. 12) is **DENIED**. For the reasons stated herein, the Court **AFFIRMS** the decision of the SSA.

## I.      INTRODUCTION

On April 27, 2018, Plaintiff proactively filed an application for DIB. (Transcript of the Administrative Record (Docket No. 8) at 207).[1] In her application, Plaintiff asserted that, as of the alleged onset date of March 23, 2018, she was disabled and unable to work due to diabetes mellitus

---

[1] The Transcript of the Administrative Record is hereinafter referenced by the abbreviation "AR" followed by the corresponding Bates-stamped number(s) in large black print in the bottom right corner of each page.

type 2, diabetic neuropathy, fibromyalgia, chronic fatigue syndrome, depression, anxiety, sleep issues, brain fog, and osteoarthritis. (AR 221.) The claims were denied initially on January 23, 2019 and upon reconsideration on July 19, 2019. (AR 18.) On December 1, 2020, Plaintiff appeared with an attorney and testified at a telephone hearing conducted by administrate law judge ("ALJ") Shannon Heath. (AR 34–63.)

On December 9, 2021, the Appeals Council denied Plaintiff's request for review of the ALJ's December 1, 2020 decision, thereby making it the final decision of the SSA. (AR 1–7.) On February 7, 2022, Plaintiff timely commenced a civil action in this court pursuant to 42 U.S.C. § 405(g). *See Weatherly v. Comm'r of Soc. Sec.*, Case No. 3:22-cv-00081. After Plaintiff filed an unopposed motion to remand, the Court entered an order on August 16, 2022 dismissing the case and remanding it "for a new hearing and a new decision that considers all of the evidence and properly evaluates the claimant's RFC including a proper evaluation of all opinion evidence." (Docket No. 17, Case No. 3:22-cv-00081).

The ALJ held another hearing on February 5, 2024, and Plaintiff appeared with an attorney and testified. (AR 1174–1207.) On April 30, 2024, the ALJ once again denied Plaintiff's claim. (AR 1155–67.) Plaintiff did not file exceptions, and the Appeals Council did not review the ALJ's decision. (AR 1152–53.) Plaintiff then timely commenced this civil action, over which the Court has jurisdiction pursuant to 42 U.S.C. § 405(g).

## II. THE ALJ'S FINDINGS

In the April 30, 2024 unfavorable decision, the ALJ included the following enumerated findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2023.

2

2. The claimant did not engage in substantial gainful activity during the period from her alleged onset date of March 23, 2018, through her date last insured of December 31, 2023 (20 CFR 404.1571 *et seq.*).

3. Through the date last insured, the claimant had the following severe impairments: status post bilateral knee arthroplasty, obesity, degenerative disc disease of the lumbar spine and cervical spine, diabetes mellitus, osteoarthritis and fibromyalgia (20 CFR 404.1520(c)).

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except no ladders, ropes, or scaffolds, occasional climbing ramps and stairs, occasional stooping, kneeling, crouching, crawling, frequent balancing, frequent but not constant reaching overhead with the bilateral upper extremities, avoid concentrated exposure to unprotected heights and moving machinery.

6. Through the date last insured, the claimant was capable of performing past relevant work as a data entry clerk (DOT 203.582-054) (sedentary and semi-skilled - SVP4), and customer service representative (DOT 249.362-026) (sedentary and semi-skilled - SVP 4). This work did not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7. The claimant was not under a disability, as defined in the Social Security Act, at any time from March 23, 2018, the alleged onset date, through December 31, 2023, the date last insured (20 CFR 404.1520(f)).

(AR 1158–67.)

### III. REVIEW OF THE RECORD

The parties and the ALJ, in combination, have thoroughly summarized and discussed the medical and testimonial evidence of the administrative record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

### IV. DISCUSSIONS AND CONCLUSIONS OF LAW

**A. Standard of Review**

The determination of disability under the Act is an administrative decision. The only questions before this Court upon judicial review are: (1) whether the SSA's decision is supported

3

by substantial evidence, and (2) whether the proper legal criteria were applied to the SSA's decision. *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 833 (6th Cir. 2016) (quoting *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009)). The SSA's decision must be affirmed if it is supported by substantial evidence, "even if there is substantial evidence in the record that would have supported an opposite conclusion." *Blakley,* 581 F.3d at 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Substantial evidence is defined as "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 241 (6th Cir. 2007); *LeMaster v. Weinberger*, 533 F.2d 337, 339 (6th Cir. 1976) (quoting Sixth Circuit opinions adopting language substantially like that in *Richardson*).

The SSA utilizes a five-step sequential evaluation process to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a). If the issue of disability can be resolved at any point during the evaluation, the ALJ does not proceed to the next step and the claim is not reviewed further. *Id*. First, if the claimant is engaged in substantial gainful activity, she is not disabled. *Id.* Second, if the claimant does not have a severe medically determinable impairment that meets the 12-month durational requirement, she is not disabled. *Id.* Third, if the claimant suffers from a listed impairment, or its equivalent, for the proper duration, she is presumed disabled. *Id.* Fourth, if the claimant can perform relevant past work based on her RFC, which is an assessment of "the most you [the claimant] can still do despite your limitations," 20 C.F.R. § 404.1545(a)(1), she is not disabled. *Id.* Fifth, if the claimant can adjust to other work based on her RFC, age, education, and work experience, she is not disabled. *Id.* The claimant bears the burden of proof through the first four steps, while the burden shifts to the SSA at step five. *Johnson v. Comm'r of Soc. Sec.*, 652

4

F.3d 646, 651 (6th Cir. 2011) (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004)).

The Court's review of the SSA's decision is limited to the record made in the administrative hearing process. *Jones v. Sec'y of Health & Human Servs.*, 945 F.2d 1365, 1369 (6th Cir. 1991). A reviewing court may not try a case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citing *Myers v. Richardson*, 471 F.2d 1265, 1268 (6th Cir. 1972)). The Court must accept the ALJ's explicit findings and determination unless the record is without substantial evidence to support the ALJ's determination. *Houston v. Sec'y of Health & Human Servs.*, 736 F.2d 365, 366 (6th Cir. 1984).

**B.      The ALJ's Five-Step Evaluation of Plaintiff**

In the instant case, the ALJ resolved Plaintiff's claim at step three of the five-step process. The ALJ found that Plaintiff met the first two steps: (1) she had not engaged in substantial gainful activity from the alleged onset date through her date last insured, and (2) her impairments of "status post bilateral knee arthroplasty, obesity, degenerative disc disease of the lumbar spine and cervical spine, diabetes mellitus, osteoarthritis and fibromyalgia" were severe.[2] (AR 1158.)

However, the ALJ determined at step three that Plaintiff was not presumptively disabled because she did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR 1160–61.) At step four, the ALJ determined that Plaintiff had the RFC to perform "light work" with certain exertional limitations. (AR 1161–67.) At step five, the ALJ determined that Plaintiff could perform past relevant work. (AR 1167.)

---

[2] The ALJ found that Plaintiff's sleep apnea, hypertension, gastroesophageal reflux disease, hypothyroidism, depression, and anxiety were non-severe impairments. (AR 1158–60.)

Therefore, the ALJ concluded that Plaintiff was not under a disability at any time from March 23, 2018, when Plaintiff proactively filed her application, through December 21, 2023, the date last insured. (AR 1167.)

## C.     Plaintiff's Assertion of Error

Plaintiff requests that this case be remanded back to the SSA for further consideration based on one assertion of error: the ALJ failed to adequately assess the medical opinions of Thomas Gonsoulin, Jr., OTR, and Deanne Threapleton, FNP. (Docket No. 13 at 13–18.) Accordingly, Plaintiff asks the Court to vacate the ALJ's decision or remand the matter under sentence four of 42 U.S.C. § 405(g), which allows a district court to enter "a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."

When evaluating medical opinions, the presiding ALJ is not required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)," but is instead directed to consider the "persuasiveness" of the medical opinions based on five categories, which include supportability, consistency, the provider's relationship with the claimant, the provider's specialization, and other factors such as familiarity with the disability program's policies. 20 C.F.R. § 404.1520c(a)-(c).[3]

Supportability and consistency are the "most important factors" in this analysis. *Id.* § 404.1520c(a). In assessing supportability, medical opinions and prior findings are "more

---

[3] This regulation changed the articulation required by ALJs when considering medical opinions. The prior regulations were interpreted to set forth a general hierarchy of medical source opinions. 20 C.F.R. § 404.1527. Although the new regulations have eliminated this hierarchy, an ALJ must still "'articulate how [he/she] considered the medical opinions' and 'how persuasive [he/she] find[s] all of the medical opinions.'" *Toennies v. Comm'r of Soc. Sec.*, No. 1:19-CV-02261, 2020 WL 2841379, at *14 (N.D. Ohio June 1, 2020) (quoting *Ryan L.F. v. Comm'r of Soc. Sec.*, No. 6:18-cv-01958, 2019 WL 6468560, at *4 (D. Or. Dec. 2, 2019)).

persuasive" if the objective medical evidence and supporting explanations that are used to support those opinions or findings are "more relevant." *Id.* § 404.1520c(c)(1). In assessing consistency, medical opinions and prior findings are "more persuasive" if they are "more consistent" with evidence from other medical and nonmedical sources. *Id.* § 404.1520c(c)(2). These two most important factors – supportability and consistency – must be explained, while the other factors may be explained, but explanation is not required. *Id.* § 404.1520c(b)(2). To determine the persuasiveness of a particular medical opinion, a court must evaluate whether the ALJ properly considered the factors set forth in the regulations. *Toennies v. Comm'r of Soc. Sec.*, No. 1:19-CV-02261, 2020 WL 2841379, at \*14 (N.D. Ohio June 1, 2020) (quoting *Ryan L.F. v. Comm'r of Soc. Sec.*, No. 6:18-cv-01958, 2019 WL 6468560, at \*4 (D. Or. Dec. 2, 2019)).

The applicable SSA regulations "require that the ALJ provide a coherent explanation of his reasoning." *Lester v. Saul*, No. 5:20-cv-01364, 2020 WL 8093313, at \*14 (N.D. Ohio Dec. 11, 2020), *report and recommendation adopted sub nom. Lester v. Comm'r of Soc. Sec.*, No. 20-1364, 2021 WL 119287 (N.D. Ohio Jan. 13, 2021). The ALJ must provide a "minimum level of articulation" in her determinations and decisions to "provide sufficient rationale for a reviewing adjudicator or court." *Warren I v. Comm'r of Soc. Sec.*, No. 20-495, 2021 WL 860506, at \*8 (N.D.N.Y. Mar. 8, 2021) (quoting 82 Fed. Reg. 5844-01 (2017)). A failure to meet these "minimum levels" of articulation "frustrates" the court's ability to determine if the ALJ's decision was supported by substantial evidence. *Hardy v. Comm'r of Soc. Sec.*, 554 F. Supp. 3d 900, 906 (quoting *Vaughn v. Comm'r of Soc. Sec.*, No. 20-1119, 2021 WL 3056108, at \*11 (W.D. Tenn. July 20, 2021)).

However, because of the "newness" of these regulations, there is a "dearth of caselaw concerning what constitutes a 'sufficient' explanation of supportability and consistency." *Terhune*

7

*v. Kijakazi*, No. CV 3:21-37-KKC, 2022 WL 2910002, at *3 (E.D. Ky. July 22, 2022) (citing *Cooley v. Comm'r of Soc. Sec.*, No. 2:20-CV-46-RPM, 2021 WL 4221620 (S.D. Miss. Sep. 15, 2021)). Nevertheless, these regulations "require that the ALJ provide a coherent explanation of his reasoning." *Lester v. Saul*, No. 5:20-cv-01364, 2020 WL 8093313, at *14 (N.D. Ohio Dec. 11, 2020), *report and recommendation adopted sub nom. Lester v. Comm'r of Soc. Sec.*, No. 20-1364, 2021 WL 119287 (N.D. Ohio Jan. 13, 2021).

### 1.    The Opinion of Thomas Gonsoulin, Jr., OTR

Plaintiff contends that the ALJ failed to appropriately assess the opinion of physical therapist Thomas Gonsoulin, Jr., OTR because the ALJ's supportability and consistency analyses were inadequate. (Docket No. 13 at 15–16.) Mr. Gonsoulin performed a functional capacity examination of Plaintiff on November 26, 2019, but did not otherwise treat Plaintiff. (AR 992–1014.) Plaintiff was referred to Mr. Gonsoulin by Dr. James Anderson, one of her providers, so that he could answer four question about her work and functional abilities: (1) did she provide high levels of physical effort throughout the testing day; (2) were her reports of pain and disability reliable; (3) using Department of Labor terminology, what were her physical work tolerances; and (4) in preparation for completion of her SSA disability application, what were her current abilities. (AR 994.)

Based on an intake interview and standardized testing, Mr. Gonsoulin concluded that Plaintiff had "high levels of physical effort"; had "fully reliable reports of pain and disability"; could never perform static standing, dynamic standing, or walking; could occasionally sit, lift 10 or 20 pounds, carry 10 pounds, and reach forward; and demonstrated a "sedentary capacity, with occasional capabilities in the LIGHT range," as detailed in his report. (AR 994–95.)

In her decision, the ALJ found that Mr. Gonsoulin's opinion that Plaintiff "could perform sedentary work with occasional capabilities in the light range" was "not fully persuasive." (AR 1165.) The ALJ took particular issue with Mr. Gonsoulin's opinion that Plaintiff could "never" perform static standing and could only stand for 19 minutes before needing a break to sit; could never walk; and could only occasionally reach forward. However, the ALJ found Mr. Gonsoulin's opinion that Plaintiff could lift up to 20 pounds occasionally to be persuasive.

With respect to standing, Mr. Gonsoulin wrote that Plaintiff "demonstrated the ability to perform tasks in a standing position for up to 19 minutes before requiring a break to sit." (AR 994.) At a later point in the report, Mr. Gonsoulin notes that the longest duration of time that Plaintiff was observed to sit during the examination was 19 minutes and 51 seconds. (AR 1012.) In her decision, the ALJ found that the 19 minute standing limitation was "supported primarily by observations." (AR 1165.) The ALJ concluded that the following findings were also "not consistent" with the finding that Plaintiff could "never" perform static standing: Plaintiff ambulated with a normal gait, crossed her legs when she sat, shifted every few moments to relieve pain white sitting, and was able to complete testing white sitting. (*Id.*) The ALJ also noted that there were no other indications in the record that Plaintiff could never stand or could stand for only 19 minutes. (*Id.*) By contrast, the ALJ pointed to Plaintiff's statements in the record that she could perform chores and evidence in the record showing that she consistently had normal strength and motor findings. (*Id.*)

With respect to walking, Mr. Gonsoulin concluded that Plaintiff's demonstrated functional tolerance indicated that she could never walk. (AR 995.) More specifically, Mr. Gonsoulin opined that Plaintiff "was able to walk without a break for less than 8 minutes." (*Id.*) However, the ALJ

9

found this conclusion to be inconsistent with the record because Plaintiff was shown to have a normal gait in several examinations. (AR 1165.)

With respect to reaching forward, Mr. Gonsoulin concluded that Plaintiff's demonstrated functional tolerance indicated that she could occasionally reach, or do so for up to one third of the day. (AR 995.) Mr. Gonsoulin stated that Plaintiff "demonstrated minimal difficulty completing tasks that required forward reaching, handling, and dexterity" but "reported increased aching in hands after ~8 consecutive minutes of this activity." (*Id.*) The ALJ, however, found this reaching conclusion to be unsupported by Mr. Gonsoulin's examination or the objective evidence in the record because it was based on Plaintiff's reports of aching rather than on significant objective findings. (AR 1165.) The ALJ also found Mr. Gonsoulin's reaching conclusion to be inconsistent with the record because Plaintiff consistently had normal findings and responded well to medication (*Id.*)

Finally, with respect to lifting, Mr. Gonsoulin found that Plaintiff could lift up to 20 pounds occasionally and "demonstrated the ability to safely lift 23 [pounds] from the floor to her thighs reporting increased low back pain." (AR 995.) The ALJ found that this opinion was "supported by the findings on examination and consistent with the record as a whole that show that the claimant presented with normal strength and motor findings." (AR 1165.)

The Court finds that the ALJ adequately considered the factors of consistency and supportability in evaluating Mr. Gonsoulin's opinion. With respect to consistency, the ALJ determined that Mr. Gonsoulin's finding that Plaintiff could perform static standing for 19 minutes before needing a break was not aligned with the findings throughout Plaintiff's medical records. Those findings indicated that Plaintiff had a normal gait, normal strength and motor findings, and could perform chores. (AR 1165.) The ALJ cited to several records to support this conclusion.

Further, the ALJ noted that there were no other reports in the record stating that Plaintiff could not stand or could stand for only a limited period. (*Id.*) As for walking, the ALJ again noted that the restriction to never walking did not align with the record findings that Plaintiff had a normal gait. (*Id.*) As for reaching, the ALJ found that Mr. Gonsoulin's opinion was not aligned with Plaintiff's normal findings on examination and the fact that she responded well to medication. (*Id.*) Finally, as for lifting, the ALJ found that Mr. Gonsoulin's opinion was not aligned with the normal strength and motor findings throughout Plaintiff's medical record. (*Id.*)

With respect to the supportability of Mr. Gonsoulin's opinion, the ALJ found that his conclusions were based primarily on his observations rather than objective findings. For standing, the opinion was not in line with Mr. Gonsoulin's other observations that Plaintiff ambulated with a normal gait, crossed her legs, and completed the examination while seated. (*Id.*) For walking, the opinion was based on findings that Plaintiff could walk without a break for eight minutes total. (*Id.*) With regard to reaching, the opinion was based on Plaintiff's reports of aching rather than "significant objective findings." (*Id.*) For lifting, however, the ALJ found that the opinion was persuasive because it was "supported by the findings on examination." (*Id.*)

The Court is not persuaded by Plaintiff's arguments about the consistency and supportability of Mr. Gonsoulin's opinion. First, Plaintiff takes issue with the ALJ's focus on Plaintiff's "subjective reports" of her pain or limitations. (Docket No. 13 at 15.) Plaintiff provides one example: the ALJ concluded that Mr. Gonsoulin's reaching limitation was not persuasive because it was based on reports of aching rather than on significant objective findings. Plaintiff argues that those restrictions were based on "extensive reliability measures designed to combat the precise issue of inappropriate reliance on subjective assessments," but the ALJ did not reference any of these reliability measures. (*Id.*) The ALJ's analysis certainly would have benefited from a

discussion of the reliability measures that Mr. Gonsoulin used in his examination, but the Court cannot find that the ALJ's failure to reference these measures amounts to an error requiring remand. The ALJ is not required to discuss an opinion from top to bottom, but rather is only required to provide "minimum levels" of articulation and a "coherent explanation" of her reasoning for finding an opinion to be persuasive. *Warren I*, 2021 WL 860506 at \*8; *Lester*, 2020 WL 8093313 at \*14. In other words, although the ALJ could have referenced the reliability measures underlying Mr. Gonsoulin's opinion, the ALJ nevertheless sufficiently explained her supportability findings.

Second, Plaintiff takes issue with the ALJ's focus on her gait. (*Id.*) Plaintiff argues that an abnormal gait – which Plaintiff was not found to have – is not a prerequisite for a finding of disability. (*Id.* at 15–16.) She also contends that the ALJ referenced imaging records in the decision, but failed to discuss those records when analyzing the consistency of Mr. Gonsoulin's opinion. (*Id.* at 16.) The Court agrees with Plaintiff that an abnormal gait is not required for a finding of disability. However, the ALJ did not make any such assertion. Rather, the ALJ referenced the finding of a normal gait to show why Mr. Gonsoulin's opinion was not consistent with other parts of the medical record.

Further, the Court finds no error in the ALJ's failure to discuss Plaintiff's imaging records when considering Mr. Gonsoulin's opinion. As an initial matter, the ALJ is not required to "address every piece of evidence" in the record. *Tucker v. Comm'r of Soc. Sec.*, No. 1:22-cv-00001, 2023 WL 309392, at \*7 (M.D. Tenn. Jan. 18, 2023). Nevertheless, the ALJ did, in fact, consider Plaintiff's imaging records in her decision, though it was not explicitly referenced in the context of Mr. Gonsoulin's opinion. (AR 1162–64.)

Third and finally, Plaintiff argues that the ALJ focused on only some of the limitations in Mr. Gonsoulin's opinion, but failed to address other key limitations. In particular, Plaintiff takes issue with the ALJ's failure to address the fact that Mr. Gonsoulin's restriction to lifting up to 20 pounds occasionally was only "from the floor to her thighs." (*Id.*) She criticizes the ALJ for failing to note that her ability to lift "from her thighs to a shelf at shoulder height" was more restricted. (*Id.*) However, as set forth above, the ALJ is not required to "address every piece of evidence" but is, instead, only required to provide "minimum levels" of articulation. *Id.*; *Warren I*, 2021 WL 860506 at *8. The Court finds that the ALJ provided an adequate logical bridge supporting the finding that Mr. Gonsoulin's opinion was not fully persuasive, particularly with respect to the consistency and supportability of the opinion. Accordingly, the ALJ's analysis of the persuasiveness of Mr. Gonsoulin's opinion was not in error.

### 2.     The Opinion of Deanne Threapleton, FNP

Plaintiff also contends that the ALJ failed to adequately assess the opinion of family nurse practitioner Deanna Threapleton because the ALJ's supportability and consistency analyses were unsupported. (Docket No. 13 at 16–17.) Ms. Threapleton treated Plaintiff for chronic pain, particularly in her back, from as early as June 4, 2014 (AR 500–20) to as recently as November 27, 2023 (AR 1792–98).[4] On August 20, 2020, Ms. Threapleton completed a medical source statement for Plaintiff. (AR 1027–29.) In this statement, Ms. Threapleton indicated her opinion as to Plaintiff's physical capabilities, and opined on her ability to lift, carry, stand, walk, sit, stoop, reach, and more. She indicated that Plaintiff's impairments would cause her to be absent from work for more than four days per month and found that Plaintiff's limitations were first present on

---

[4] This date range is based on the Court's review of the record. It is not clear if Plaintiff is still treating with Ms. Threapleton.

January 1, 2019. (AR 1029.) On January 30, 2024, Ms. Threapleton provided an "Updated Medical Source Statement" indicating that the "limitations of function" that she had included in the August 20, 2020 statement still existed and persisted to the same degree. (AR 2185.) To support and explain this conclusion, Ms. Threapleton stated, "Pain management ongoing."

The ALJ found that Ms. Threapleton's opinion was "not fully persuasive." (AR 1166.) The ALJ took particular issue with Ms. Threapleton's opinion that: (1) Plaintiff was limited to sitting for two hours, was limited to standing and walking for four hours, and needed to change positions and walk around at certain frequencies; (2) Plaintiff was limited to frequently reaching with the right hand and occasionally reaching with the left hand; (3) Plaintiff had certain environmental limitations; and (4) Plaintiff would miss more than four days of work per month. However, the ALJ found Ms. Threapleton's opinion that Plaintiff could lift up to 20 pounds occasionally and 10 pounds frequently to be persuasive.

With respect to standing, walking, sitting, and changing positions, Ms. Threapleton opined that Plaintiff could stand and walk for about four hours during an eight-hour work day; could sit for less than two hours during an eight-hour work day; could sit for 45 minutes before changing positions; could stand for 45 minutes before changing positions; and would need to walk around for 45 minutes every 45 minutes. (AR 1027.) The ALJ found these limitations to be "not supported" by Ms. Threapleton's treatment notes, which showed that Plaintiff had "normal standing posture, normal sensation, and normal strength." (AR 1166.) The ALJ cited Ms. Threapleton's treatments notes from November 7, 2022, December 12, 2022, and January 24, 2023, among others, stating that Plaintiff had a normal standing posture and walked without a limp. (AR 1873, 1881, 1888.) The ALJ also found these limitations to be "not consistent" with the record as a whole, which showed "normal gait and normal motor findings with limited and

14

conservative treatment," decreased pain with treatment, and that Plaintiff could perform a range of activities. (AR 1166.) The ALJ pointed to Plaintiff's medical records, including, for example, a broad swath of records from Comprehensive Pain Specialists from June 4, 2014 to August 13, 2018 (AR 359–991) and specific records from Pain Management Group wherein Plaintiff reported that her pain level was lower with medication (AR 1049, 1053, 1059).

With respect to reaching, Ms. Threapleton opined that Plaintiff could frequently reach with her rights hand, but only occasionally reach with her left hand. (AR 1028.) The ALJ also found these limitations to be "not supported" by Ms. Threapleton's treatment notes, which showed normal strength, and to be "not consistent" with the record as a whole, which showed that Plaintiff did not receive specific treatment for her hands. (AR 1166.)

With respect to environmental limitations, Ms. Threapleton opined that Plaintiff would need to avoid even moderate exposure to extreme cold; extreme heat; high humidity; fumes, odors, gases; perfumes; soldering fluxes; solvents/cleaners; and chemicals. (AR 1028.) The ALJ found these limitations to be "not supported" by Plaintiff's treatment notes and not "consistent" with the evidence as a whole, particularly considering that Plaintiff was never found to have pulmonary or cardiac impairments. (AR 1166.)

With respect to missing work, Ms. Threapleton opined that Plaintiff would miss more than four days of work per month. (AR 1029.) The ALJ found this limitation to be "not supported" by the evidence, which showed that Plaintiff had appointments every few months for medication refills and consistently reported improvements with medication. (AR 1166.) The ALJ also noted that, despite Plaintiff's reports of "good days and bad days," this was not documented in the record. (AR 1166.)

Finally, with respect to lifting, Ms. Threapleton opined that Plaintiff could lift up to twenty pounds occasionally and ten pounds frequently. (AR 1027.) The ALJ found this limitation to be persuasive because it was "supported" by Ms. Threapleton's treatment notes and "consistent" with the record as a whole showing normal gait and normal strength findings. (AR 1166.)

The Court finds that the ALJ adequately considered the factors of consistency and supportability in evaluating Ms. Threapleton's opinion. As detailed above, with respect to the consistency of Ms. Threapleton's opinion, the ALJ found that several of her findings were not consistent with the findings throughout Plaintiff's medical records, including that Plaintiff had "normal gait and normal motor findings with limited and conservative treatment," decreased pain with treatment, and could perform a range of activities that went beyond the limitations found by Ms. Threapleton. The ALJ also noted that the medical records were devoid of any reference to Plaintiff receiving treatment for her hands or upper extremities, which rendered Ms. Threapleton's opinions on reaching less persuasive. In addition, the ALJ found the environmental limitations imposed by Ms. Threapleton to be at odds with Plaintiff's lack of pulmonary or cardiac issues.

With respect to the supportability of Ms. Threapleton's opinion, the ALJ cited to several of Ms. Threapleton's own records that rendered Ms. Threapleton's findings less internally consistent. For example, the ALJ pointed to records wherein Plaintiff "consistently showed normal standing posture, normal sensation, and normal strength." The ALJ found that this evidence from Ms. Threapleton contradicted her opinion that Plaintiff had walking, standing, sitting, and reaching limitations. The ALJ also found that Ms. Threapleton's treatment notes did not indicate pulmonary or cardiac issues and therefore did not support the environmental limitations. In sum, the ALJ provided a logical bridge between her analysis of the evidence and her finding that Ms. Threapleton's opinion was "not fully persuasive" based on its supportability and consistency.

16

The Court is also not persuaded by Plaintiff's arguments regarding the consistency and supportability of Ms. Threapleton's opinion. Plaintiff generally takes issue with the ALJ's findings that the opinion was not supported by Ms. Threapleton's own treatment notes, and was not consistent with other treatment notes. (Docket No. 13 at 16–17.) Plaintiff makes three specific arguments to support her position that the ALJ incorrectly analyzed the consistency of Ms. Threapleton's opinion. First, Plaintiff asserts that the ALJ failed to explain "why gait and strength findings were necessary" to support a finding of disability. (*Id.*) As the Court explained above with respect to Mr. Gonsoulin's opinion, the Court agrees with Plaintiff that an abnormal gait is not required for a finding of disability. However, the ALJ did not make any such assertion. Rather, the ALJ cited to medical records indicating that Plaintiff had a normal gait to show why Ms. Threapleton's opinion was not consistent with other medical evidence and was not supported by Ms. Threapleton's own treatment notes.

Second, Plaintiff contends that Ms. Threapleton's "normal" findings were consistent with Mr. Gonsoulin's "normal" findings. (*Id.* at 17.) Although this may be true, a general consistency between two opinions does not mean that one of those opinions is necessarily consistent with other evidence in the record. In other words, similarities between these two opinions does not mean that the ALJ's opinion on the consistency of one of those opinions lacks substantial evidence. In short, Plaintiff's argument does not demonstrate that the ALJ's analysis of Ms. Threapleton's opinion was flawed or unsupported by substantial evidence.

Third and finally, Plaintiff argues that the ALJ failed to consider her repeated epidural injections, need for surgery, or resurgences of pain despite medication. (*Id.*) Although the ALJ did not reference Plaintiff's December 2022 shoulder surgery, the ALJ did reference Plaintiff's epidural injections and her claims of pain throughout her decision. (AR 1162–64.) Further, as set

17

forth above, the ALJ is not required to "address every piece of evidence" but is, instead, only required to provide "minimum levels" of articulation. *Tucker*, 2023 WL 309392 at *7; *Warren I*, 2021 WL 860506 at *8. Here, the ALJ provided a logical bridge supporting the finding that Ms. Threapleton's opinion was not fully persuasive, particularly with respect to the consistency and supportability of the opinion. Accordingly, the ALJ's analysis of the persuasiveness of Ms. Threapleton's opinion was not in error.

In sum, the Court is "limited to determining whether [the Commissioner's decision] is supported by substantial evidence and was made pursuant to proper legal standards." *Shepard v. Comm'r of Soc. Sec.*, 705 F. App'x 435 (6th Cir. 2017) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)). Here, the Court finds that the ALJ's analysis of both Mr. Gonsoulin's opinion and Ms. Threapleton's opinion – in particular the consistency and supportability of their opinions – is supported by substantial evidence. For these reasons, the Court rejects Plaintiff's assertion of error.

## V.  CONCLUSION

For the above stated reasons, Plaintiff's motion for judgment on the administrative record (Docket No. 12) is **DENIED** and the Social Security Administration's decision is **AFFIRMED**.

An appropriate Order will accompany this memorandum opinion.

BARBARA D. HOLMES
United States Magistrate Judge

18